## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

**DUSTIE ZIMMERMAN,**

      Plaintiff,

    v.

                                Case No. 26-CV-722

                                JURY TRIAL DEMANDED

**MEMORIAL MEDICAL CENTER, INC.**
**d/b/a/ TAMARACK HEALTH**
**ASHLAND MEDICAL CENTER,**

      Defendant.

## COMPLAINT

Plaintiff Dustie Zimmerman, by her attorneys, alleges as follows against Defendant Tamarack Health Ashland Medical Center:

### NATURE OF THE CASE

1. This is an employment discrimination, retaliation, and lactation-rights action arising from Defendant's treatment of Plaintiff after she requested medically supported pregnancy-, childbirth-, and lactation-related workplace accommodations following maternity leave.

2. Plaintiff was a staff pharmacist at Defendant's Ashland Medical Center. Before her maternity leave, Defendant praised her work, reported no

1

performance or behavioral concerns, and permitted other pharmacists to work without chemotherapy-related duties.

3. After Plaintiff sought accommodations related to breastfeeding, hyperlactation, pumping breaks, and avoiding exposure to hazardous chemotherapy drugs while lactating, Defendant denied key portions of her accommodation request, pressured her to transfer to a less secure role, subjected her to heightened scrutiny and discipline, failed to investigate her complaints of retaliation and pregnancy/maternity discrimination, suspended her without pay, and terminated her employment.

4. Defendant's conduct violated the Pregnant Workers Fairness Act, Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, Title VII's anti-retaliation provisions, the Fair Labor Standards Act as amended by the Providing Urgent Maternal Protections for Nursing Mothers Act, and related federal protections.

5. Plaintiff demands a trial by jury on all claims so triable.

## PARTIES

6. Plaintiff Dustie Zimmerman is an individual residing in Ashland, Wisconsin.

7. Defendant Memorial Medical Center d/b/a Tamarack Health Ashland Medical Center is a healthcare employer located at 1615 Maple Lane, Ashland, Wisconsin 54806 whose registered agent is listed as Kent Dumonseau.

8. At all relevant times, Defendant was an "employer" within the meaning of Title VII, the Pregnant Workers Fairness Act, and the Fair Labor Standards Act.

9. At all relevant times, Defendant acted through its employees, managers, supervisors, agents, and representatives, including but not limited to Pharmacy Director Amanda Templer, Human Resources Business Partners Kevin Ledin and Chad Lipske, Human Resources Director Nicole Baraks, and senior leadership including Aimee Bush.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law, including Title VII, the Pregnancy Discrimination Act, the Pregnant Workers Fairness Act, and the Fair Labor Standards Act as amended by the PUMP Act.

11. This Court also has jurisdiction under 42 U.S.C. § 2000e-5(f), 42 U.S.C. § 2000gg-2, and 29 U.S.C. §§ 216 and 218d.

12. Venue is proper in the Western District of Wisconsin under 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices occurred in Ashland County, Wisconsin, where Defendant employed Plaintiff and where relevant employment records are maintained.

13. Plaintiff timely filed charges with the Wisconsin Equal Rights Division and the Equal Employment Opportunity Commission concerning Defendant's discrimination and retaliation.

14. The EEOC issued a Notice of Right to Sue on June 16, 2026 for Charge No. 443-2026-01191, advising Plaintiff that she had ninety days from receipt to file suit.

15. This action is timely filed within the applicable limitations periods.

## FACTUAL ALLEGATIONS

*Plaintiff's Employment and Pregnancy*

16. Plaintiff began working for Tamarack Health at the Hayward Medical Center on  November 10, 2023 as a per diem pharmacist.

17. Plaintiff performed well at Hayward and had no performance or behavioral issues there.

18. In September 11, 2024, Plaintiff was awarded participation in the HRSA/NHSC Rural Health Loan Repayment Program, which required qualifying work at an approved rural health site.

19. In October 14, 2024, Defendant offered Plaintiff a staff pharmacist position at Tamarack Health Ashland Medical Center at approximately 0.9 FTE.

20. In October 24, 2024 before beginning work at Ashland Medical Center, Plaintiff informed Director Amanda Templer that she was pregnant and confirmed it in a follow up email on October 25, 2024. Human Resources also knew that she was pregnant and due near the end of February 2025.

21. Plaintiff began working as a Staff Pharmacist at Ashland Medical Center on or about November 11, 2024.

22. Plaintiff worked under Pharmacy Director Amanda Templer.

23.  During onboarding, Defendant delayed certain chemotherapy and hazardous-drug duties because Plaintiff was pregnant.

24.  In January 2025, while Plaintiff was still pregnant and within her first ninety days of employment at Ashland, Defendant assigned her to chemotherapy duties.

25.  Defendant did not provide Plaintiff with pregnancy-specific safeguards or a meaningful opportunity to avoid hazardous-drug exposure without fear of jeopardizing her employment.

26.  Plaintiff gave birth to her son on or about March 1, 2025.

*Plaintiff's Lactation and Hazardous-Drug Accommodation Requests*

27.  Plaintiff experienced hyperlactation and needed to express breast milk regularly to prevent engorgement, clogged ducts, and mastitis.

28.  Plaintiff's healthcare provider supported accommodations related to breastfeeding and lactation.

29.  On April 29, 2025, Plaintiff's physician, Dr. Cristina Castillo-Nelson, stated that Plaintiff could return to work with breastfeeding accommodations, including pumping breaks and reassignment of chemotherapy duties to other willing staff to prevent transmission of chemotherapy exposure to her infant.

30.  Plaintiff's physician further explained that Plaintiff should be allowed a 20–30-minute pumping break every 3-4 hours to prevent engorgement and that additional personal protective equipment would not eliminate the risk of trace chemotherapy exposure to her baby.

31. Defendant was aware of Plaintiff's pregnancy, childbirth, lactation, breastfeeding status, hyperlactation, need to pump, and medically supported request to avoid hazardous-drug exposure while breastfeeding.

32. Defendant received Plaintiff's accommodation paperwork before she returned from maternity leave.

33. On or about April 22, 2025, Defendant sent Plaintiff a letter approving reasonable break time and a private, non-bathroom space to breastfeed during work hours, while also requiring her to remain available by portable pharmacy phone and respond immediately in certain situations.

34. Defendant separately responded to Plaintiff's request related to hazardous drugs and chemotherapy medications by offering additional personal protective equipment and surface testing, but Defendant did not grant the requested temporary reassignment away from hazardous-drug handling.

35. Plaintiff expressed patient safety concerns of taking on chemotherapy duties while breastfeeding, as the frequent pump breaks would require handing off critical information on multiple patient's regimens in different stages of their visit to another pharmacist who was pulled away from other duties. In addition to the relief pharmacist having to relay critical information back to Plaintiff to resume her duties again. Chemotherapy has a high risk for error and coordinating chemotherapy order verification, premedication compounding, chemotherapy compounding, and delivery is time sensitive. The fear of making a mistake and constant struggle of exchanging information to another pharmacist led Plaintiff to pumping at her desk so

that she could monitor orders and compounding from her computer while having coworkers physically touch the chemotherapy while she was actively pumping.

36. Plaintiff also informed Defendant that other pharmacists were willing to cover chemotherapy duties while she was breastfeeding and that she could still work weekends, holidays, and twelve-hour shifts.

37. Defendant nevertheless maintained that it could not excuse Plaintiff from hazardous-drug responsibilities for the requested period and suggested an alternative position in Hayward that would have materially worse terms, including no guaranteed hours and loss of benefits. Plaintiff would also be in breach of her HRSA loan contract for going "per diem" at Hayward as she needed a guarantee of at least 20hours per week at an approved HRSA site.

38. On May 13, 2025, Plaintiff wrote to Human Resources after an accommodation meeting and stated that she was not interested in transferring to a casual position at Hayward or leaving her full-time pharmacist position at Ashland.

39. In that same email, Plaintiff stated that she feared retaliation from her supervisor for requesting accommodations and raising pharmacy issues.

40. On May 15, 2025, Defendant confirmed that it agreed to pumping breaks and additional PPE but refused to excuse Plaintiff from hazardous-drug duties for the requested period. Defendant further stated that if Plaintiff did not return to work with Defendant's proposed accommodations, or did not accept the Hayward alternative, Defendant would "move forward with replacing" her.

7

41. On May 15, 2025, Plaintiff confirmed that she would return to work with the accommodations Defendant offered, while reiterating that it was never her intent to leave her Ashland position.

*Discipline and Retaliation After Maternity Leave*

42. Plaintiff returned from maternity leave on or about May 19, 2025.

43. On the morning she returned, Defendant called Plaintiff to Human Resources and disciplined her for a February 5, 2025 incident involving a coworker, even though Defendant had not raised the matter before her leave and even though Plaintiff had previously reported the coworker's conduct to her supervisor.

44. Plaintiff reasonably believed this immediate discipline upon return from maternity leave was retaliatory and related to her protected accommodation requests.

45. On May 24, 2025, Plaintiff emailed Pharmacy Director Amanda Templer seeking advice about how to handle a coworker situation and expressing concern that raising the issue could harm her.

46. Rather than reasonably address Plaintiff's concern, Defendant escalated the issue to Human Resources.

47. On June 4, 2025, Defendant met with Plaintiff and accused her of refusing to touch chemotherapy, even though she had returned only recently, had performed or assisted with chemotherapy-related duties as they arose, and had not refused chemotherapy work.

8

48. On June 5, 2025, Plaintiff emailed Human Resources Business Partner Chad Lipske stating that she felt targeted by both Matt Papka and Amanda Templer, that there was a double standard in expectations, and that an independent investigation into the issue and interviews of staff could be helpful.

49. Defendant did not conduct a fair and independent investigation in response to Plaintiff's June 5, 2025 complaint.

50. On June 16, 2025, Plaintiff raised a safety concern involving hazardous-drug waste handling.

51. Shortly after Plaintiff raised that safety concern, Defendant summoned her to Human Resources and issued additional discipline regarding her alleged tone, body language, and supposed creation of a hostile environment.

52. On June 24, 2025, Plaintiff's physician documented that Plaintiff was working to manage ADHD and postpartum anxiety symptoms and would benefit at work from clear directions and clearly delineated work expectations.

53. Defendant continued to discipline or threaten Plaintiff using vague standards and subjective criticisms while failing to provide clear, consistent expectations.

54. Defendant also treated Plaintiff differently from similarly situated employees who were not pregnant, postpartum, breastfeeding, lactating, or requesting pregnancy/lactation accommodations.

55. Plaintiff repeatedly reported that she was being targeted, that Defendant was applying double standards to her work, and that Defendant was failing to investigate her concerns.

*Suspension*

56. On October 6, 2025, Defendant suspended Plaintiff without pay for three scheduled shifts.

57. Defendant's October 6, 2025 consultation form accused Plaintiff of violating workplace behavior and patient safety expectations based on a comment involving coworker Matt Papka.

58. Plaintiff disputed Defendant's characterization and explained that she had been trying to improve her relationship with Mr. Papka, that she had apologized, and that she believed Mr. Papka was applying different standards to her than to others.

59. The suspension caused Plaintiff lost wages and other harm.

60. Defendant's application of discipline after Plaintiff's accommodation requests and complaints was pretextual, discriminatory, and retaliatory.

*Further Retaliation and Protected Complaints*

61. On or about November 11, 2025, Plaintiff emailed Human Resources Director Nicole Baraks asking to meet about possible retaliation and possible discrimination.

10

62. On or about November 13, 2025, Plaintiff met with Human Resources regarding retaliation and discrimination concerns, including that Amanda Templer treated her differently after she returned from maternity leave.

63. Defendant did not reasonably investigate Plaintiff's retaliation and discrimination concerns.

64. On or about November 20, 2025, Defendant told Plaintiff that it did not find retaliation, but also relayed additional criticisms from Amanda Templer and warned Plaintiff that allegedly undermining her supervisor could be a terminable offense.

65. Plaintiff maintained that her questions were patient-safety and continuity-of-care questions and that she asked questions only to clarify job duties, ensure patient safety, and maintain continuity of care.

66. Defendant's response to Plaintiff's protected complaints chilled her ability to raise patient-safety, discrimination, and retaliation concerns.

*Termination*

67. On December 4, 2025, Plaintiff was working as the clinical pharmacist. Coworker Matt Papka was assigned to medication reconciliation, and another pharmacist was assigned to chemotherapy.

68. Around 3:00 p.m., Mr. Papka asked whether it was okay for him to leave early.

69. Plaintiff asked Mr. Papka patient-care and continuity-of-care questions about whether he had completed medication reconciliation tasks for patients whose orders were pending.

70. Plaintiff did not purport to supervise Mr. Papka, did not tell him he could not leave, and asked questions within the scope of her clinical pharmacist role to ensure safe patient care.

71. Defendant terminated Plaintiff on December 9, 2025, citing the December 4, 2025 interaction with Mr. Papka.

72. Defendant's termination consultation form claimed that Plaintiff asked Mr. Papka inappropriate and undermining questions and challenged the director's authority, but Plaintiff disputed Defendant's version of events.

73. During the termination meeting, Plaintiff asked whether Defendant had investigated the event with another pharmacist who witnessed it. Defendant admitted it had not.

74. Defendant terminated Plaintiff despite her explanation that she had asked about patient care and medication reconciliation, not about whether Mr. Papka was permitted to leave early.

75. Defendant's stated reasons for termination were false, incomplete, shifting, and pretextual.

76. Defendant terminated Plaintiff because of her pregnancy, childbirth, maternity, breastfeeding, lactation, need for accommodations, requests for pregnancy- and lactation-related accommodations, opposition to discrimination, and complaints of retaliation.

*PUMP Act and Lactation Break Interference*

77.    Plaintiff was a nursing mother who needed reasonable break time to express breast milk for her nursing child.

78.    Defendant knew Plaintiff needed 20-30 minute pumping breaks every 3-4 hours.

79.    Defendant required Plaintiff to remain available by portable pharmacy phone during pumping breaks and to respond immediately to certain interruptions.

80.    Defendant failed to clearly define "urgent pharmacy needs" or ensure that Plaintiff's pumping breaks would be protected from non-emergency interruption.

81.    Defendant's requirement that Plaintiff remain available to answer phone calls and make immediate judgments during pumping breaks interfered with her right to reasonable break time to express breast milk.

82.    Defendant's conduct caused Plaintiff lost wages, emotional distress, physical risk, and other damages.

83.    To the extent Defendant contends the PUMP Act required pre-suit notice concerning lactation space or break-time violations, notice was unnecessary or excused because Defendant terminated Plaintiff after she requested and attempted to exercise her lactation rights, because Defendant had actual notice of the alleged violations, and because the claims include retaliation and termination after protected lactation-related requests.

## CLAIMS FOR RELIEF

### Count I — Pregnant Workers Fairness Act: Failure to Accommodate

84.    Plaintiff incorporates paragraphs 1 through 83 as if fully set forth herein.

85.    The Pregnant Workers Fairness Act, 42 U.S.C. §§ 2000gg et seq., including 42 U.S.C. §§ 2000gg-1(1), 2000gg(4), and 2000gg-2, prohibits covered employers from failing to make reasonable accommodations to the known limitations of a qualified employee related to pregnancy, childbirth, or related medical conditions, unless the employer demonstrates that the accommodation would impose an undue hardship.

86.    Plaintiff was a qualified employee within the meaning of the PWFA.

87.    Plaintiff had known limitations related to pregnancy, childbirth, lactation, breastfeeding, hyperlactation, postpartum health, and related medical conditions.

88.    Plaintiff requested reasonable accommodations, including but not limited to protected pumping breaks, temporary reassignment away from hazardous chemotherapy handling while breastfeeding, clarification of pumping-break expectations, and clear work expectations.

89.    Plaintiff's requested accommodations were reasonable.

90.    Defendant could have accommodated Plaintiff without undue hardship, including by assigning her to clinical/floor pharmacist and medication-reconciliation duties, allowing willing pharmacists to handle chemotherapy duties temporarily, permitting role swaps, using available staffing, and protecting her pumping breaks from non-emergency interruption.

14

91.   Defendant had previously operated with pharmacists who did not perform chemotherapy duties and had available mechanisms to cover those duties.

92.   Defendant failed to provide reasonable accommodations and instead offered inadequate or coercive alternatives, including additional PPE that did not eliminate the risk of hazardous-drug exposure and a less secure Hayward position.

93.   Defendant's failure to accommodate caused Plaintiff lost wages, lost benefits, emotional distress, physical risk, humiliation, inconvenience, and other damages.

### Count II — Pregnant Workers Fairness Act: Retaliation and Interference

94.   Plaintiff incorporates paragraphs 1 through 83 as if fully set forth herein.

95.   Plaintiff engaged in protected activity under the PWFA, including 42 U.S.C. §§ 2000gg-1(5), 2000gg-1(6), and 2000gg-2, by requesting pregnancy, childbirth, postpartum, breastfeeding, lactation, and related-medical-condition accommodations; providing medical documentation; opposing denial of accommodations; and complaining that she feared retaliation.

96.   Defendant took materially adverse actions against Plaintiff, including but not limited to threatening replacement, disciplining her immediately upon return from maternity leave, subjecting her to heightened scrutiny, issuing written discipline, suspending her without pay, refusing to fairly investigate her complaints, and terminating her employment.

97. Defendant's adverse actions were causally connected to Plaintiff's protected PWFA activity.

98. Defendant also interfered with Plaintiff's exercise of PWFA rights by pressuring her to accept inadequate accommodations, threatening replacement, chilling protected complaints, and imposing discipline after she sought accommodations.

99. Defendant's stated reasons for its actions were pretext for unlawful retaliation and interference.

100. Defendant's retaliation and interference caused Plaintiff damages.

**Count III — Title VII / Pregnancy Discrimination Act: Pregnancy, Childbirth, Maternity, Breastfeeding, and Lactation Discrimination**

101. Plaintiff incorporates paragraphs 1 through 83 as if fully set forth herein.

102. Title VII, as amended by the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000e(k), 2000e-2(a), and 2000e-5, prohibits discrimination because of sex, including pregnancy, childbirth, and related medical conditions.

103. Plaintiff was pregnant, gave birth, took maternity leave, breastfed, lactated, experienced hyperlactation, and needed pregnancy-, childbirth-, postpartum-, lactation-, and breastfeeding-related accommodations.

104. Defendant treated Plaintiff less favorably than similarly situated employees who were not pregnant, postpartum, breastfeeding, lactating, or requesting related accommodations.

105. Defendant subjected Plaintiff to adverse employment actions, including heightened scrutiny, discipline, suspension, and termination.

106. Defendant's treatment of Plaintiff was motivated by her pregnancy, childbirth, maternity leave, breastfeeding, lactation, hyperlactation, and related medical needs.

107. Defendant's asserted reasons for disciplining, suspending, and terminating Plaintiff were false, incomplete, inconsistent, and pretextual.

108. Defendant's unlawful discrimination caused Plaintiff damages.

### Count IV — Title VII: Retaliation

109. Plaintiff incorporates paragraphs 1 through 83 as if fully set forth herein.

110. Plaintiff engaged in protected activity under Title VII, including 42 U.S.C. §§ 2000e-3(a) and 2000e-5, by opposing pregnancy/maternity discrimination, complaining of retaliation and discrimination, requesting investigations, reporting differential treatment, and filing administrative charges.

111. Defendant knew of Plaintiff's protected activity.

112. Defendant subjected Plaintiff to materially adverse actions, including discipline, threats, heightened scrutiny, suspension, refusal to investigate, and termination.

113. Defendant's adverse actions would dissuade a reasonable employee from making or supporting a charge of discrimination.

114. There was a causal connection between Plaintiff's protected activity and Defendant's adverse actions.

115.   Defendant's stated reasons for its actions were pretextual.

116.   Defendant's retaliation caused Plaintiff damages.

## Count V — Fair Labor Standards Act / PUMP Act:

### Failure to Provide Reasonable Break Time and Retaliation,

117.   Plaintiff incorporates paragraphs 1 through 83 as if fully set forth herein.

118.   The Fair Labor Standards Act, as amended by the PUMP Act, 29 U.S.C. §§ 207(r), 218d, 215(a)(3), and 216(b), requires covered employers to provide reasonable break time for an employee to express breast milk for the employee's nursing child and prohibits retaliation against employees who assert rights protected by the FLSA.

119.   Plaintiff was an employee protected by the FLSA and PUMP Act.

120.   Defendant was a covered employer under the FLSA.

121.   Plaintiff needed reasonable break time to express breast milk for her nursing child.

122.   Defendant knew Plaintiff needed pumping breaks and knew her physician had recommended 20-30 minute breaks every 3-4 hours.

123.   Defendant interfered with Plaintiff's right to reasonable break time by requiring her to remain available by portable pharmacy phone, requiring immediate response to undefined "urgent pharmacy needs," and failing to protect her pumping breaks from non-emergency work interruptions.

124.   Plaintiff engaged in protected activity under the FLSA and PUMP Act by requesting lactation breaks, objecting to inadequate pumping-break

18

expectations, providing medical documentation, and seeking clarification and protection for lactation breaks.

125. Defendant retaliated against Plaintiff for asserting her lactation rights by threatening replacement, disciplining her, subjecting her to heightened scrutiny, suspending her, and terminating her employment.

126. Defendant's violation of the FLSA and PUMP Act caused Plaintiff lost wages, liquidated damages, emotional distress and other legally recoverable damages, attorneys' fees, costs, and other relief.

## Count VI — Retaliation Under the FLSA

127. Plaintiff incorporates paragraphs 1 through 83 as if fully set forth herein.

128. Plaintiff engaged in protected FLSA activity under 29 U.S.C. §§ 215(a)(3) and 216(b) by raising concerns related to unpaid meal breaks during shifts when pharmacists could not take uninterrupted, duty-free breaks and by asserting her rights related to lactation breaks under the PUMP Act, 29 U.S.C. §§ 207(r) and 218d.

129. Defendant knew of Plaintiff's protected FLSA activity.

130. Defendant subjected Plaintiff to materially adverse actions after she raised these concerns, including discipline, heightened scrutiny, suspension, and termination.

131. Defendant's adverse actions were causally connected to Plaintiff's protected FLSA activity.

132. Defendant's stated reasons were pretextual.

133.   Defendant's retaliation caused Plaintiff damages.

## DAMAGES

134.   As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, including but not limited to:

a.   Lost wages, salary, overtime or premium pay, and other compensation;

b.   Lost benefits;

c.   Lost employment opportunities;

d.   Losses related to her HRSA/NHSC loan repayment obligations and qualifying employment time;

e.   Emotional distress, humiliation, embarrassment, anxiety, stress, and loss of enjoyment of life;

f.   Physical harm and increased risk associated with interrupted lactation and hazardous-drug exposure concerns;

g.   Liquidated damages;

h.   Compensatory damages;

i.   Punitive damages;

j.   Attorneys' fees, litigation expenses, and costs; and

k.   Prejudgment and post-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dustie Zimmerman respectfully requests that the Court enter judgment in her favor and against Defendant Tamarack Health Ashland Medical Center and award the following relief:

A.      A declaration that Defendant violated Plaintiff's rights under federal law;

B.      Back pay, front pay, lost benefits, and all other lost compensation;

C.      Compensatory damages for emotional distress and other non-economic harm;

D.      Liquidated damages under the FLSA and other applicable statutes;

E.      Punitive damages to the extent permitted by law;

F.      Equitable relief, including but not limited to expungement of unlawful discipline, suspension, and termination records;

G.      An injunction requiring Defendant to comply with Title VII, the Pregnancy Discrimination Act, the Pregnant Workers Fairness Act, and the FLSA/PUMP Act;

H.      Reasonable attorneys' fees, costs, and litigation expenses;

I.      Prejudgment and post-judgment interest; and

J.      Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 5, 2026.

Respectfully submitted,

**HAWKS QUINDEL, S.C.**

By: *s/ Summer H. Murshid*
Summer H. Murshid, SBN 1075404
Christine A. Donahoe, SBN 1092282
Connor J. Clegg, SBN 1118534
5150 N. Port Washington Road, Suite 243
Milwaukee, WI 53217

21

Telephone: 414-271-8650
Email: smurshid@hq-law.com
        cdonahoe@hq-law.com
        cclegg@hq-law.com

Attorneys for Plaintiff Dustie Zimmerman